**FORM TO BE USED BY FEDERAL PRISONERS FOR FILING A PETITION FOR WRIT OF HABEAS CORPUS UNDER TITLE 28 U.S.C. § 2241**

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF MASSACHUSETTS**

TIM SEAWRIGHT #03632-055

<u>                          Petitioner                          </u>
<u>P.O. BOX 879</u>
<u>UNIT H-A</u>
<u>AYER, MA  01432</u>
(Full name under which you were convicted;
 Prison Number; Full Mailing Address).

**04-40145**

VS.

CIVIL ACTION NO._____

<u>DAVID L. WINN, WARDEN,</u>
<u>                          Respondent(s)                          </u>
<u>FEDERAL BUREAU OF PRISONS</u>

<u>P.O. BOX 880</u>
<u>AYER, MA  01432</u>
(Name of Warden or other authorized person
 having custody of Petitioner).

**PLEASE COMPLETE THE FOLLOWING. READ THE ENTIRE PETITION BEFORE FILLING IT OUT.  ANSWER THOSE QUESTIONS WHICH PERTAIN TO YOUR TYPE OF CLAIM.**

1. This petition concerns:  (check appropriate blank)

_____  A conviction
_____  A sentence  (**CAUTION:** If you are attacking a sentence imposed under a Federal Judgment, you
                           must file a direct motion under 28 U.S.C. § 2255 in the Federal Court which entered the
                           Judgment).
_____  Jail or prison conditions
_____  Prison discipline issue
_____  A parole problem
__XX__  Other.  State briefly:  FAILURE OF RESPONDENTS TO AFFORD ACCEPTABLE
                           COMMUNITY STANDARD DRUG ADDICTION AND MENTAL
           HEALTH TREATMENT AFTER AGREEING TO PROVIDE SUCH TREATMENT. ACTIONS
           THAT CONSTITUTE CRUEL AND INDIFFERENT ACTIONS.

2. Place of detention:  FEDERAL MEDICAL CENTER FORT DEVENS MASSACHUSETTS.

1

**HAVE YOU FILED PREVIOUS PETITIONS FOR HABEAS CORPUS MOTION UNDER TITLE 28 U.S.C. § 2255, OR ANY APPLICATIONS, PETITONS OR MOTIONS WITH RESPECT TO THIS CONVICTION?**

_____ Yes          XXX          No

3. If your answer is "yes," give the following information:

a. Name of the Court:  N/A

b. Nature of proceeding:  N/A

c. Grounds raised:  N/A

d. Result:  N/A

e. Date of result:  N/A

f. Citation or number of any written opinion or order entered pursuant to each such disposition:  N/A

4. If you did not file a motion under section 2255 of Title 28 U.S.C., or if you filed a motion and it was denied, state why your remedy by way of such motion is inadequate or ineffective to test the legality of your detention:  N/A

5. Does counsel presently represent you? _____ Yes    XX    No

If so, Name address and phone number of counsel:  N/A

6. Name and location of court, which imposed sentence:  UNITED STATES DISTRICT COURT, WESTERN DISTRICT OF NEW YORK.

7. Indictment or case number, if known: ___94-CR-603T-016___

8. Offense or Offenses for which sentence was imposed: __18 USC §841 & 846__

9. Date upon which sentence was imposed and the term of the sentence: __OCTOBER 1,1997__
__CT.1/108 MOS./CT.3/108 MOS./CT.18&23/48 MOS./CT.25/108 MOS./10 YRS. SR ALL__
__CONCURRENT.__

10. When was a finding of guilt made? (Check one)
___XX___ After a plea of guilty

_____ After a plea of not guilty

_____ After a plea of Nolo Contendre

11. If you were found guilty after a plea of not guilty, was that finding made by:
_____ A jury

___XX___ A judge without a jury

12. Did you appeal the judgment of the conviction or the imposition of a sentence? _____ Yes __XX__ No

13. If you did appeal, give the following information for each appeal:

a. Name of court: _____N/A_____

b. Result: _N/A_____

c. Date of result: ___N/A_____

d. Citation or number of opinion: ____N/A_____

e. Grounds raised:  (List each one)
___N/A_____

NOTE: If you appealed more than once, attach an additional sheet of paper the same size, give all the information requested above in question number 13, a through e. DO NOT WRITE ON BACK OF PAGE.

14. Summarize briefly the facts supporting each ground. If necessary attach a single page behind this page.

**CAUTION:** If you fail to set forth all grounds in this petition, you may be barred from presenting additional grounds at a later date.

a. Ground one:  DUE PROCESS UNDER THE FIFTH AMENDMENT

Supporting Facts: (Tell your story BRIEFLY without citing cases or law. You are CAUTIONED that you must state facts not conclusions, in support of your grounds. E.g., who did exactly what to violate your rights at what time or place).

(SEE MEMORANDUM)

b. Ground Two:  DELIBERATE INDIFFERENCE UNDER THE EIGHTH AMENDMENT

Supporting Facts:                    (SEE MEMORANDUM)

Ground Three:  UNEQUAL ACCESS TO FUNDAMENTAL REGULATIONS GOVERNING

~~ADDICTION TREATMENT IN VIOLATION OF THE NINTH AMEND.~~

Supporting Facts:                    (SEE MEMORANDUM)

4

15. If this petition concerns jail or prison conditions, prison discipline, a parole problem or other cause under 28 U.S.C. § 2241, answer the following:

a. Did you present the facts in relation to your present complaint in the internal prison grievance procedure?

_____XX_____ Yes _____ No

(1) If your answer to "a" above is yes, what was the result? COMPLAINT WAS REJECTED
_____
_____

(2) If your answer to "a" above is no, explain: __N/A_____
_____
_____

b. Did you present your claim to the Bureau of Prisons or other federal agency for administrative action?

_____XX_____ Yes _____ No

(1) If your answer is "yes," state the date such claim was submitted and what action, if any has been taken:
FINAL REMEDY WAS SUBMITTED JUNE 8, 2004 AND DENIED ON JUNE 22, 2004.
_____

(2) If your claim has not been acted on, attach copies of any correspondence you have received from the Bureau of Prisons or other federal agency concerning you.

c. **STATEMENT OF CLAIM:** State here as briefly as possible the facts of your case. DO NOT give any legal arguments or cite any cases or any statutes. Attach extra pages of the same size to this page if more room is necessary. DO NOT write on the reverse side of this page.

PETITIONER IS ENROLLED IN THE BOP RDAP FOR TREATMENT. PROGRAM CONSISTS
OF SEVERAL PHASES THAT MUST BE SUCCESSFULLY COMPLETED INCLUDING PHASE-3
THE COMMUNITY TRANSITION PHASE.

RESPONDENTS HAVE ARBITRARILY DENIED PETITIONER THE OPPORTUNITY TO
MEANINGFULLY COMPLETE LATER PHASES BASED ON INAPPROPRIATE RATIONALE
THAT CONFLICTS WITH AGENCY POLICY.

_____(SEE MEMORANDUM)_____
_____
_____
_____
_____
_____
_____

**16. RELIEF:** state briefly what you want the court to do for you. Make no legal arguments. Cite no cases or statutes.

PETITIONER REQUESTS THAT HE BE AFFORDED FULL INCENTIVES OF THE
RDAP INCLUDING 180 DAYS OF CCC TRANSITIONAL TREATMENT AND 12 MONTHS
EARLY RELEASE CONSIDERATION  UNDER 18 USC § 3621 (E)

Signed on this the ___28___ day of ___July_____, 200_4_ .

_____
Signature of petitioner

**I DECLARE (OR CERTIFY, VERIFY OR STATE) THAT THE FOREGOING IS TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE OR INFORMATION AND BELIEF AND THAT ANY FALSE STATEMENTS MADE THEREIN ARE MADE SUBJECT TO THE PENALTIES OF APPLICABLE LAWS RELATING TO UNSWORN FALSIFICATIONS TO AUTHORITIES.**

**Executed on:** ___7/28_____, 200 _4_ .

_____
Signature of petitioner

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

Tim Seawright,                       §
      (Petittioner)          §
                      §
                      §
     v.                          §    Case No. _____
David L. Winn, Warden,               §
Federal Bureau of Prisons,           §
      (Respondents)          §

---

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO
28 USC §2241

---

COMES NOW, Petitioner Tim Seawright, (hereinafter: "petitioner"/ "Seawright") pursuant to inter alia 28 USC §2241; 28 USC § 1331; Estelle v. Gamble, 429 U.S. 97, 97 S.Ct. 285 (1976); Farmer v. Brennan, 511 U.S. 825, 114 S.Ct. 1970 (1994); Amer. Correctional Association: Manual of Correctional Standards, 10 (3d Ed.1966); The Law of Senten-cing,Corections and Prisoner Rights: 5th Ed. (1997); Dept. of Justice Program Statement no. 5330.10: Drug Abuse Programs Manual (6/26/95); Dept. of Justice Program Statement no. 3420.09 Standards of Employee Conduct; Rhodes v. Robinson, et al 612 F.2d 766 (3d Cir.1979); Gunderson v. Hood, 268 F.3d 1149 (9th Cir.2001); Monahan v. Winn, 276 F.Supp. 2d 196 (D.Mass.2003) and the Due Process Clause of the United States Constitution.

1.

I.                    <u>JURISDICTIONAL STATEMENT</u>

a.    **The Custody Requirement:**

1.    Habeas corpus is available to prisoners in custody in violation
of the Constitution, laws, or treaties of the United States. Custody
includes not only physical custody, but also <u>restraints</u> that are
severe, immediate, and not shared by the public generally. The "writ
of habeas corpus shall not extend to a prisoner unless .... [h]e is in
custody in violation of the Constitution ...." <u>Id</u>. § 2241(c)(3) (1994).
Cf. <u>Lefkowitz v. Fair</u>, 816 F.2d 17, 19-21 (1st Cir.1987)(discussing
the 'custody' requirement for federal jurisdiction); see also <u>Gonz-</u>
<u>alez v. United States</u>, 150 F.Supp. 2d 240 (D.Mass. 2001)(Stearns,D.J.)
" .... petitions that challenge the manner, location, or conditions
of a sentence's execution must be brought pursuant to § 2241 in
the custodial court".


2.    Being incarcerated in the District of Massachusetts at the
Federal Medical Center Fort Devens, petitioner's custodial require-
ment is herein established.


b.    **Jurisdictional venue:**

3.    28 USC § 2241 (a) states in pertinent part: "Writs of habeas
corpus may be granted by the Supreme Court, any justice thereof,
the district courts and any circuit judge <u>within their respective</u>
<u>jurisdictions</u> ...." Petitioner is properly before the court. (emph-
asis added).


II.                   <u>EXHAUSTION REQUIREMENT</u>

4.  The explicit exhaustion requirements which are contained in
the AEDPA and the PLRA do not  apply to habeas petitions filed
under § 2241. See **Casanova v. Dubois**, 304 F.3d 75, 78 (1st Cir.2002).
Petitioner has nevertheless affirmatively exhausted all available
BOP remedy <u>pro forma</u>, and the claims herein are ripe for resolution.
(<u>Exhibit</u>-A1-A3).


III.                    <u>**PROCEDURAL HISTORY**</u>


5.  Petitioner Tim Seawright was designated to the Federal Medical
Center Fort Devens, Ayer, Massachusetts to be enrolled in the Bureau
of Prisons' (BOP) <u>500 Hour Residential Drug Abuse Program</u>, (RDAP) to
receive comprehensive substance addiction and associated mental
health treatment and therapy as determined by BOP experts in these
fields of rehabilitation.


6.  On July 21, 2003, petitioner and twenty six (26) of his peers
(Cohort-RDAP-13) began treatment. RDAP-13 graduated on April 28, 2004
with petitioner successfully completing the residential "phase" of
his treatment with honorable mention from both his assigned Drug
Treatment Specialist (DTS) and the RDAP Coordinator, Dr. Susan Bates.


    (Upon entering treatment, BOP RDAP staff verbally assure all
Program participants that it is expected that each patient will
invest honestly and entirely 100% effort in their recovery. A bind-
ing "<u>Agreement To Participate</u>" is negotiated and signed by RDAPC
Bates and the patient.)


See **Program Statement no. 5330.10**: "<u>Drug Abuse Programs Manual</u>' effect-
ive June 26, 1995, Chpt. 5).

                              3.

7.   Based upon the respondent BOP's verbally explicit represent-
ations to the petitioner during the interview stage for treatment
consideration, and respondents implicit posturing delivered through
receipt of verified RDAP materials, petitioner understood that all
three (3) "components" would be made available to him for success-
ful completion and meaningful recovery.


8.   The BOP-RDAP personnel have arbitrarily aborted the petitioner's
treatment expectations, as those expectations were understood to be
and represented by respondents as attainable.


9.   Petitioner sought redress through proper administrative remedy
procedures (Exhibits-A1-A3) supra. On March 25, 2004 his plea was
rejected as baseless (Exhibit-A2, Regional Director D.Scott Dodrill)
and on June 22, 2004, his Central Office appeal was summarily dis-
missed pursuant to an absurd rationale. (Exhibit-A3). A federal
question is now manifest. Id. 28 USC § 1331.  This claim ensues.


IV.                    ARBITRARINESS OF ACTIONS


10.  Respondent's actions against petitioner are basically reprehen-
sible. In fact, the infliction of such gross negligence exceeds the
legitimate purposes of such a proven taxpayer funded program. As
discussed above, there are three (3) phases to the RDAP. See supra,
RDAP Manual, at Chpt. 5, pg. 1:


     ----- the unit based residential program lasting between six-
to twelve months, (500 hours minimum);


4.

------ the institution transition phase; and

------ the community transitional services, lasting up to six months <u>when the inmate is transferred</u> to a community corrections center (CCC) or to home confinement.

It is this third phase that respondents have denied the petitioner and in so doing halting his addiction treatment which promotes relapse and failure.

11.    The rationale used by respondent BOP to deny petitioner his required treatment represents a systematic dismantling of department of justice policy and federal regulation; see <u>supra</u>.

12.    Immediately preceding Seawright's completion of phases one and two of the RDAP, treatment staff submitted appropriate requests for him to be transferred to a CCC to facilitate his ongoing therapy and to complete the final phase of his treatment. As noted above, petitioner was informed that he was eligible for all "incentives" afforded participants which included full 180 day CCC transitional treatment placement, <u>and</u> the statutory 12 month early release under **18 USC § 3621 (e)** and would receive such incentives for his expected successful completion of the residential portion of the RDAP.

13.    Following review of petitioner's CCC referal packet it was decided that "Mr. Seawright has been found to be appropriate for a Community Corrections Center placement of 90 days maximum." (See <u>Exhibit</u>-B, "memorandum For David L. Winn, Warden, FMC Devens). The arbitrary abbreviation of petitioner's 180 day placement to 90

5.

days maximum was approved by the Northeast Regional Director, M.E. Ray. This truncating effectively worked a double tort to the harm of the petitioner: a) his phase-3 transition therapy was foreclosed, and, b) his § 3621 (e) early release was a collateral wipe-out in that because petitioner cannot receive his required, indeed recommended, phase-3 treatment per policy, he is ineligible for the §3621 (e) award for otherwise successful completion of all three required courses. This is an all too frequent manipulation of the programs declaration occurring throughout the federal prison system.

14.  Because petitioner then exercised his right to challenge the decision to cut by half his CCC transitional-phase and corresponding § 3621 (e) award, respondent's then vindictively stripped away his expected entitlement to any policy driven phase-3 treatment and in so doing removed him from any early release consideration which would have been awarded based on petitioner's excellent program participation. Compare: Exhibits-Gl and G2, Change In Drug Abuse Treatment Program Status Memorandum dated 3/5/04 with Attachment-J, § 3621 (e) Eligibility Memorandum, signed by RDAP Dr. Bates.

## V.            PETITIONER HAS A RIGHT TO REHABILITATION

a.   Respondents Alleged Concerns:

15.  On or about February 4, 2004, petitioner received a written position from respondents representative Ms. Helen L. Ramsdell, Community Corrections Manager, (Exhibit-C). The response indicates one (1) overriding concern used by the respondents to truncate, and then vindictively deny Seawright any further treatment.

16.  Respondent's actions center around petitioner's <u>juvenile</u> rape conviction in which all records are statutorily <u>sealed</u> and wgich according to Department of Justice policy, **P.S. 5330.10;** **28 CFR §§ 550.56** and **550.58** should not be used in support of any decision to exclude an otherwise eligible candidate.


17.  The record establishes numerous facts that defeat the spurious decision making of respondent, including, but not limited to:


---- petitioner is a successful graduate of the phase 1 and 2 unit-based portion of the RDAP,

---- federal sentencing laws prohibit the use of juvenile offender records in calculating criminal history scores to applied to any penalty,

---- Chapter 6 of the RDAP Manual (P.S. 5330.10) covers appropriate "qualifications" and "criteria" to be weighed when making correction-al programming determinations,

---- Section 6 (c) of Chpt. 6 <u>reaffirms</u> the fact that only **"prior** **adult"** convictions shall be used in consideration of RDAP incentives,

---- Section 6 (c) further states: "With regard to prior offenses, <u>juvenile</u> adjudications and disciplinary findings <u>cannot</u> be used to <u>deny</u> an inmate a § 3621 (e) sentence reduction." (emphasis added),

---- Currently many hundreds of federal offenders with <u>adult</u> con-victions for rape and violence are being routinely placed in CCC's following successful completion of the early phases of the RDAP,

---- respondents have chosen to ignore the statutory protections the State of New York has afforded petitioner as to his juvenile records. (see <u>Exhibit</u>-D(Nov. 17, 1998 Letter to petitioner from Anne M. Measday, Clerk of the Supreme & County Courts).


**b.    Interpretation of BOP Policy:**

18.  Administrative Law and Procedure defines a "program statement" as an internal administrative agency guideline which is akin to an

7.

interpretative rule. Federal inmates inherit certain expectations that the BOP will follow the <u>scope</u> and <u>spirit</u> of their own program statements. In the instant matter, the ".... BOP is [not] using its program statement to advise the public how it is interpreting its own regulations," in fact, they are acting in a way that effect- ively deligitimizes that controlling regulatory concepts of the RDAP. Cf. **<u>Gunderson v. Hood</u>**, 268 F.3d 1149, 1155 (9th Cir.2001) and RDAP <u>Program Statement</u>, 5330.10.

19. Petitioner asks this court to approach statutory interpretation. "It is axiomatic that the plain words and structure of a statute must be paramount." **<u>United States v. Aversa</u>**, 984 F.2d 493, 498 (1st Cir. 1993)(en banc). The rules cited in Program Statement No. 5330.10 (Drug Abuse Programs Manual) are contained in **28 CFR §§§ 542, 545, and 550**. The "plain words" in these statutory regulations are clearly not ambiguous. For example; Chapter 6 at 6.1.1 states at <u>sub</u> <u>sec</u> (3):

> "With regard to prior offenses, juvenile adjudications and disciplinary findings <u>cannot</u> be used to deny an inmate a 3621 (e) sentence reduction." <u>Id</u>. (emphasis added),

and it is further presumed that any such juvenile "adjudications" may not be "used" to deny an inmate the very critical phase-3 of his addiction treatment. How unclear is the clause at ¶6.1.1 of chapter 6? Indeed, not unclear in the slightest way and the "plain words" doctrine must survive any challenge. Mr. Seawright's juvenile rape conviction (pursuant to an <u>Alford</u> plea) cannot sustain respon- dent's decision to deny him his addiction treatment that was actually designed by the respondents.

8.

20.  It is also an established canon of statutory construction
(or in this case, regulatory construction) that "....words should
never be given a meaning that produces a ...... counterintuitive
result." Cf. **Kelly v. United States**, 924 F.2d 355, 361 (1st Cir.1991).

21.  Moreover, as long as this indifference is allowed to carry-on,
respondents further violate Department of Justice Standards of Employ-
ee Conduct as those canons are sanctioned at **5 CFR § 2635**, (Stand-
ards of Ethical Conduct for Employees of the Executive Branch);
**Executive Orders nos. 12674** and **12731** (Prescribing Standards of
Ethical Conduct); **DOJ Order 1735.1** (Procedures for Complying with
Uniform Standards and Other Ethics Requirements -- 9/17/92) and
finally **BOP Program Statement No. 3420.09** (Standards of Employee
Conduct). As shown by review of all pertinent exhibits, respondent's
have:

---- conducted themselves in such a manner to discredit the agency;

---- failed to conduct themselves in a manner that creates and
maintains respect for the Bureau of Prisons, Dept. of Justice, and
the U.S. Government;

---- failed to avoid any action which might result in, or create the
appearance of, adversely affecting the confidence of the public in
the integrity of the U.S. Government;

---- showing favoritism or giving preferential treatment to one
inmate, or a group of inmates, over another; and

---- failed to participate in conduct which would leead a reason-
able person to question the employee's impartiality. Id. supra.

These overt actions committed by respondents have had a clear and
proximate negative effect on petitioner's life and liberty so as

9.

to implicate the due process clause of the Fifth Amendment of the
United States Constitution. See **Monahan v. Winn**, 276 F.Supp.2d
196, 219 (D.Mass.2003) wherein respondent Winn has already been
cited to suppress and violate the rights of those inmates he keeps,
citing **Sandin v. Connor**, 515 U.S. 472, 115 S.Ct. 2293 (1995) where
the Supreme Court held that a prisoner's liberty interest is implicated
only when government action "imposes atypical and significant hardship
on the inmate  in relation to the ordinary incidents of prison life."
It cannot be claimed that the abrupt abortion of the very expectations
petitioner was assured for his participation in the RDAP is consist-
ent with "the ordinary incidents of prison life." Id. supra. Indeed,
Seawright was led to falsely believe for over a course of 9 months
of intense and comprehensive program participation that he would
receive all of 180 days of the Phase-3 CCC Transitional Component
of the RDAP, and the 12 month early release pursuant to §3621 (e),
made plans and commitments expectant of respondent's "honesty" only
to then have his prospective life and liberty stripped away with the
swipe of a pen absent any sound correctional principles, or respon-
sibility which contribute to the likelihood of relapse. Deliberate
actions that "shock the conscience".


c.   **Rehabilitation:**

22.   The Supreme Court has held in certain contexts that institut-
ionalized individuals possess a right to treatment. Cf. **Rouse v.
Cameron**, 373 F.2d 451 (D.C. Cir.1966) with **New York State Assn.
for Retarded Children v. Carey**, 393 F.Supp. 715 (E.D.N.Y. 1975).
In **Morales v. Turman**, 383 F.Supp. 53 (E.D.Tex. 1974) it was held
that an incarcerated juvenile "must be involved in a cohesive treat-

10.

ment strategy that has been professionally designed to suit his
individual needs and to achieve his rehabilitation and return to
the community." Id. Without such a program, any involuntary commitment
of an individual would amount to an arbitrary exercise of govern-
mental power in violation of due process. Petitioner's "treatment
strategy" was as equally "designed" as that in Morales. See Treat-
menmt Plan 8/21/03 (Exhibit-E).

23.  To state a cognizable claim, a prisoner must allege acts or
omissions sufficiently harmful to evidence deliberate indifference.
Compare: **Estelle v. Gamble**, 429 U.S. 97, 97 S.Ct. 285 (1976). The
totality of circumstances here establish prima facia deliberate
indifference. To falsely lend hope of a new life to a recovering
addict to then pull that hope directly out of his reach under base-
less concerns establishes deliberateness. Indeed, respondent's
state of mind also confirms deliberate indifference as the vindictive
taking away of all incentives violates both the Eighth Amendment and
Ninth Amendments of the Constitution.

24.  After agreeing to provide treatment by verified agreement (see
Exhibit-F, Agreement To Participate) respondent then inherited a
duty to perform. The civil law generally calls a person reckless
who acts or (if the person has a duty to act) fails to act in the
face of an unjustifiably high risk of harm that is either known or
so obvious that it should be known. Petitioner asserts that there
can be no doubt that the respondent experts are aware of imminent
risk of harm if petitioner returns to the community without the
benefits of the full "treatment strategy" that they "designed"

11.

themselves. This is arbitrary in law and reason and must be now overruled.

25.    Respondent's penalogical mind-set in their approach to deny petitioner what he was led to expect are relevant to credibility because they have made statements inconsistent with both policy and society's understanding of crime and punishment. In fact, respondent's actions clearly promote failure, and alarmingly, they know it. (See Exhibits, supra). Respondent claims that their goals of re-entry include reduction of recidivism and successful reintegration of offenders into the community. (Bureau of Prisons Mission Statement). However, their actions are clearly diametrically opposed to their public mission guise.

26.    The reality is an approach that results in less emphasis on rehabilitation, and more on incapacitation. See **Governor's Commission on Criminal Justice Innovation**, Final Report, (Commonwealth of Massachusetts, 2004). The exercise of discretion in the area of classification is crucial because if a prisoner is "overclassified" it may (as here) prevent him or her from participating in treatment, job release and other rehabilitative programs. Id. supra. See **Liz Barret & Dale G. Parent**, Transition From Prison To Community Initiative, 11 (2002). Finally, there are precious few detailed and coordinated transition plan models for offenders in the area of such importance as housing, employment, drug addiction and treatment and other essential services. When respondent failed petitioner, they failed society and due process is tossed to the scrap heap.

VI.                              CONCLUSION

27.  Petitioner implores this Honorable Court to allow this writ
of habeas corpus. The national crisis surrounding the issue of
effective prisoner re-entry has reached  epidemic levels across
the nation, where each year approximately 600,000 inmates are
returning back to the communities from jails and prisons. Within (3)
years, almost half (300,000) of those released will be re-arrested.
See **Mata Nelson & Jennifer Trone**, "Why Planning for Release Matters",
**Vera Institutte of Justice**. It is the very actionable neglect fost-
ered by respondent that manifest these alarming statistics, making
decisions absent sound rationale and dumping ex-offenders into the
community often without appropriate treatment (as here) during incarc-
eration, or a solid release plan for post-release supervision.
Certainly, punishment and incapacitation play an important role in
the criminal justice system. However, without appropriate treatment
and rehabilitative programs, both inside and outside the prison
walls, the consequences of policy decisions and budget allocations
are clear: prisoners, once released, are ill prepared to overcome
such barriers as substance abuse, housing, mental and physical
health issues, and employment. Without the adequate balance between
incapacitation and access to behavior-changing opportunities, offenders,
like petitioner, more often than not, return to a life of crime.
The sorry fact is that the respondent's, through their collective
decisive actions, have effectively set the petitioner up for
failure in contravention of their very own policies. This court
must now intervene and halt this malfeasance that rises to a

                                13.

cognizable federal question. Deriliction of duty is certainly a realistic conclusion.

28.    A penal system cannot be operated in such a manner that it impedes the ability of inmates to attempt their own rehabilitation. However, this is precisely what petitioner is experiencing.

> "The rationale for the right to treatment is clear.
> If society confines a man for the benevolent purpose
> of helping him .... then the right to so withhold
> his freedom depends entirely upon whether help is in
> fact provided .... when the legislature justifies
> confinement by a promise of treatment, it thereby
> commits the community to provide the recourses
> necessary to fulfill the promiss." Id.

Bazelton, Implementing The Right To Treatment, 36 U.Chi. L. Rev. 742, 748-49 (1968). The rehabilitation theory rests upon the belief that human behavior is the product of antecedent causes, that these causes can be identified, and that on this basis therapuetic meas-ures can be employed to effect changes in behavior of the person being treated. **The Law of Sentencing, Corrections and Prisoner Rights,** 5th Ed., (L.S. Brawham, Sheldon Krantz((1997).

**WHEREFORE**, this Court should hold the actions of the respondents indifferent and deliberate in accordance with controlling authority and grant the writ.

Submitted This ___9f___ Day of July, 2004:

                              Respectfully submitted,

                              _____
                              Mr. Tim Seawright, Petitioner
14.

# PROOF OF SERVICE

I, _Timothy Seawright #06362-055_ , certify that on _July 28, 2004_ , 200___ I mailed a copy of this document and all attachments via First Class mail to the following parties at the addresses listed below:

```
Clerk of the Court              Mr. David L. Winn, Warden
U.S. District Courthouse        FMC Devens
595 Main Street                 P.O. Box 880
Worcester, MA  01608-2076       Ayer, MA  01432

(Orig. & 2 Copies)              (1 Copy & Exhibits)
```

# PROOF OF SERVICE FOR INCARCERATED LITIGANTS

In addition to the above Proof of service, all litigants who are currently incarcerated should include the following statement with all documents to be filed with the court:

I certify that this document was given to officials[1] on this date for forwarding to the United States District Court for the District of ___Massachusetts___ . I further certify under penalty of perjury that the forgoing is true and correct. **Title 28 U.S.C. § 1746.**

Respectfully submitted this __28__ day of __July__ , 200_4_ .

X _____
Name: _Timothy Seawright_
Number: _06362-055_
FMC Devens, Unit _H-A_
P.O. Box 879
Ayer, Massachusetts 01432

---

1 Pleadings by prisoners who represent themselves are to be considered filed at the moment such pleadings are delivered to prison authorities for forwarding to clerk. **Houston v Lack**. **487 U.S. 266 (1988).**

15.