```
            UNITED STATES DISTRICT COURT
              DISTRICT OF MASSACHUSETTS
```

|  |  |
|---|---|
| TIM SEAWRIGHT, | ) |
| Petitioner, | ) |
| v. | ) Civil Action No. 04-40145-PBS |
| DAVID L. WINN, Warden, | ) |
| Respondent. | ) |

**RESPONDENT'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS
THE PETITIONER'S HABEAS CORPUS PETITION**

The respondent, David L. Winn, Warden for the Federal Medical Center Devens, Ayer, Massachusetts, respectfully requests that this Court dismiss the above-captioned matter pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure as the petitioner has failed to state a claim upon which relief can be granted.

**SUMMARY OF FACTS**

The petitioner, Tim Seawright, Reg. No. 06362-055, is a federal inmate who is incarcerated at the Federal Medical Center in Devens, Massachusetts (FMC Devens). On October 1, 1997, he was sentenced in the United States District Court for the Western District of New York to an aggregate sentence of 108 month term of imprisonment with a 10 year term of supervised release to follow for conspiracy to possess with intent to distribute and distribution of 500 grams or more of cocaine, conspiracy to possess with intent to distribute and distribution of 5 kilograms

or more of cocaine, use of communication facility in committing, causing, & facilitating the conspiracy, and possession with intent to distribute cocaine.[1]  Assuming he receives all Good Conduct Time available to him under 18 U.S.C. § 3624 (b), his projected release date will be April 9, 2005.  In the event that all of his remaining Good Conduct Time is disallowed, his full-term expiration date on this offense is June 6, 2006.[2]

While incarcerated at the Federal Correctional Institution (FCI) in Elkton, Ohio, on or about May 24, 2002, the petitioner completed an "Agreement To Participate In A BOP Residential Drug Abuse Treatment Program" form.[3]  Contained within the form was the following language: "I understand that if I have been found eligible for an early release under 18 U.S.C. § 3621(e), <u>this eligibility is provisional, and may change</u>."[4]

On or about June 19, 2002, the petitioner signed a "Notice of Residential Drug Abuse Program Qualification and Provisional § 3621(e) Eligibility" form.[5]  Section 2 of this form states the

---

[1] <u>See</u> Declaration of Patrick Ward attached as Exhibit 1, Document 1A, Judgment and Commitment Order, and Document 1B, Sentence Monitoring Computation Data Public Information Data Sheet.

[2] <u>See</u> Document 1B.

[3] <u>See</u> Document 1H.

[4] <u>Id.</u>

[5] <u>See</u> Document 1I.

following:

> UNDERSTAND THAT NEARING THE TIME OF YOUR RELEASE, THE WARDEN WILL DETERMINE IF YOU ARE ELIGIBLE FOR TRANSFER TO A COMMUNITY BASED PROGRAM.  IF YOU ARE NOT ELIGIBLE, YOU CANNOT COMPLETE THE COMMUNITY TRANSITIONAL SERVICE PORTION OF THE DRUG PROGRAM, AND THEREFORE, YOU MAY NOT RECEIVE A  § 3621(e) RELEASE.[6]

Immediately below this language, the Drug Abuse Program Coordinator indicated that:

> MY CURRENT ASSESSMENT, IN CONSULTATION WITH YOUR UNIT TEAM, IS THAT IT <u>DOES NOT</u> APPEAR THAT YOU ARE PROVISIONALLY ELIGIBLE FOR AN EARLY RELEASE.[7]

And, as reasons therefore, the Drug Abuse Program Coordinator inserted "Ineligible for early release under 3621 (e) due to the following reason(s): Sex Offender Public Safety Factor."[8]  Upon completion of this form in June of 2002, the petitioner was placed on the Residential Drug Abuse Program (RDAP) waiting list pending designation to an institution with the program.

On August 28, 2002, the petitioner was transferred to FMC Devens in Massachusetts, one of the institutions that has an RDAP.[9]

On July 21, 2003, the petitioner entered the unit-based

---

[6] <u>Id.</u>

[7] <u>Id.</u>

[8] <u>Id.</u>

[9] <u>See</u> Document 1J, Inmate History, Admission-Release.

segment of the RDAP at FMC Devens.[10]  On that date, the petitioner was provided with another "Notice of RDAP Qualification and Provisional §3621(e) Eligibility" form.[11]  On this form, the Drug Abuse Program Coordinator at FMC Devens, Dr. Bates, indicated within Section 2, that her "current assessment" was that the petitioner did appear provisionally eligible for early release, "providing [the petitioner] receive CCC placement."[12]  In addition, this form again states:

> IF APPLICABLE, I UNDERSTAND THAT A DETERMINATION OF EARLY RELEASE FOR ME IS <u>PROVISIONAL, MAY CHANGE</u>, AND DEPENDS ON CONTINUED POSITIVE BEHAVIOR AND SUCCESSFUL PARTICIPATION IN ALL COMPONENTS OF THE PROGRAM, INCLUDING COMMUNITY TRANSITIONAL SERVICES.[13]

The petitioner participated in phase I of the RDAP, the unit-based residential phase, from July 21, 2003 through April 28, 2004.[14]  While enrolled within the Drug Program, Unit Team staff at FMC Devens continued to process the petitioner for consideration for a Community Corrections Center (CCC) placement. On November 28, 2003, the petitioner's Unit Team, signed an "Institutional Referral For CCC Placement" form on or after April

---

[10] See Document 1K, Inmate History, Drug Programs.

[11] See Document 1L.

[12] Id.

[13] Id.

[14] See Document 1K, Inmate History, Drug Programs.

30, 2004.[15] This form, along with other enumerated documents, was referred to the Community Corrections Manager (CCM) Office in Pittsburgh, Pennsylvania because the petitioner's release residence was listed in Rochester, New York (Rochester, New York area is covered by the Community Corrections Office in Pittsburgh, Pennsylvania).[16] At Section 11 of the Institutional Referral for CCC Placement, it provides: "It should be noted that inmate Seawright also has a history of serious violence due to prior juvenile adjudications for Robbery and Rape."[17] This referral packet was then reviewed by the Northeast Regional Office (NERO) of the Federal Bureau of Prisons (BOP), as well as the CCM in Pittsburgh, for consideration of a CCC placement. Upon review of the petitioner's case by the NERO, a memo was prepared and forwarded to the respondent on or about December 16, 2003, which indicated that the petitioner was going to be limited to a maximum placement of 90 days.[18]

While the Regional Office and the CCM's Office were considering the petitioner's for a CCC placement, the petitioner wrote to the Northeast Regional Office, as well as to the CCM in

---

[15] See Document 1M.

[16] See Document 1N, November 2003 Progress Report.

[17] See Document 1M.

[18] See Document 1O.

Pittsburgh seeking more than a 90 day placement.[19] In the responsive letter prepared by the CCM in Pittsburgh on or about February 4, 2004, it was pointed out to the petitioner that he had not been approved for any placement at that point and that his case was under review.[20] In fact, the CCM specifically pointed out that a Public Safety Factor (PSF) of Sex Offender, as applied to the petitioner based on his prior rape conviction, can serve as a basis to exclude an inmate from a community based program.[21] This letter points to Program Statement 7310.04, CCC Utilization and Transfer Procedures, where such limitation can be found.[22]

On or about February 26, 2004, due to the inability to find a particular CCC that would accept him, the petitioner was denied any CCC placement.[23] The notice sent from the CCM's office indicated that the petitioner was referred to three different CCC's, but all declined to accept him due to his prior sex offense.[24]

---

[19] See Document 1P, February 2004 CCM Response Letter.

[20] Id.

[21] Id.

[22] See Document 1Q.

[23] See Document 1S, February 2004 Notice of Denial of CCC.

[24] Id.

On or about March 5, 2004, the petitioner was notified through a "Change In Drug Abuse Treatment Program Status Memorandum" that he was not eligible for the community transitional services phase of RDAP, that his early release date under §3621(e) was to be removed, and that he would no longer be eligible for any early release.[25]  Additionally, a memorandum was provided to the respondent on or about March 8, 2004, indicating that the petitioner was no longer eligible for early release.[26]

On or about January 20, 2004, the petitioner submitted a "Request for Administrative Remedy" to challenge the denial of a full 180 day CCC placement and the subsequent early release consideration pursuant to § 3621(e).[27]  In a response dated February 19, 2004, the respondent denied the petitioner's request.[28]

On or about February 27, 2004, the petitioner appealed the respondent's decision in a Regional Administrative Appeal to the Northeast Regional Director of the BOP.[29]  In the Regional Appeal, the petitioner again challenged the decision by the BOP

---

[25] See Document 1T.

[26] See Document 1U, March 2004 NERO Memorandum.

[27] See Document 1D.

[28] Id.

[29] See Document 1E.

to limit his CCC placement to 90 days or less due to his prior rape offense.[30] In a response dated March 25, 2004, the petitioner's appeal was denied by the Northeast Regional Director.[31]

On or about June 8, 2004, the petitioner submitted a Central Office Administrative Remedy Appeal to the National Inmate Appeals Administrator challenging the Regional Director's response.[32] On June 22, 2004, the petitioner's appeal was rejected because it was not timely filed as it was due on April 24, 2004.[33] The petitioner was further advised that he would need staff verification on BOP letterhead explaining that the untimeliness was hot his fault.[34] The petitioner failed to resubmit his appeal on this issue.[35]

The petitioner has filed this Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241. He challenges the decision by the BOP in excluding him from the last phase of the 500-Hour RDAP, which would permit an early release from his sentence,

---

[30] Id.

[31] Id.

[32] See Document 1F.

[33] Id.

[34] Id.

[35] See Document 1C, Administrative Remedy History.

based upon his completion of up to six months in a CCC placement. The petitioner argues that the respondent arbitrarily denied his placement to a CCC, which in effect precludes his early release under Title 18 U.S.C. § 3621(e)(2)(B). As relief, the petitioner seeks a full 180 day placement to a CCC and 12 months early release.[36]

**ARGUMENT**

**I.   THE PETITIONER HAS FAILED TO EXHAUST HIS ADMINISTRATIVE REMEDIES AS REQUIRED UNDER THE PRISON LITIGATION REFORM ACT.**

The Prison Litigation Reform Act of 1995, as amended 42 U.S.C. 1997e (a) ("PLRA"), requires a prisoner to exhaust his administrative remedies before suing over prison conditions. Porter v. Nussle, 534 U.S. 516, 520 (2002); Booth v. Churner, 532 U.S. 731, 734 (2001). In Booth v. Churner, the United States Supreme Court held that under the PLRA, an inmate seeking only money damages must complete any prison administrative remedy process capable of addressing the inmate's complaint and providing some form of relief, even if the process does not make specific provision for monetary relief. Id. at 1824. See also Rogers v. United States, 180 F.3d 349, 357 (1st Cir. 1999), cert. denied, 528 U.S. 1126 (2000)(once administrative remedies are exhausted, prisoners may then seek review by filing a habeas

---

[36] See Petition, p6, ¶ 16. In addition, the Court should note that because the petitioner's projected release date is April 9, 2005, a full 180 day placement or a twelve month sentence reduction is not possible.

9

petition under 28 U.S.C. § 2241); <u>Nyhuis v. Reno</u>, 204 F.3d 65, 78 (3d Cir. 2000)(PLRA makes exhaustion mandatory in all cases); <u>Alexander v. Hawk</u>, 159 F.3d 1321, 1328 (11th Cir. 1998)(futile and inadequate nature of administrative remedy did not preclude mandatory exhaustion requirement of the PLRA).

In the case at hand, the petitioner failed to fully exhaust his available administrative remedies on the issue that is the subject of his habeas corpus petition.[37]  Although the petitioner filed a Request for Administrative Remedy and a Regional Administrative Remedy Appeal, he failed to exhaust by not properly filing a Central Office Administrative Remedy Appeal within the time limitations.[38]  The petitioner filed his Central Office Administrative Remedy Appeal on or about June 8, 2004; it was due on April 24, 2004.[39]  Per the rejection dated June 22, 2004, the petitioner was permitted to refile his appeal if he included the appropriate documentation and a verification from

---

[37] <u>See</u> Document 1C, Administrative Remedy History.

[38] <u>See</u> Document 1C, Administrative Remedy History; Document 1D, Request for Administrative Remedy, Case Number 323988-F1, and Response; Document 1E, Regional  Administrative Remedy Appeal, Case Number 323988-R1, and Response, and Document 1F, Central Office Administrative Remedy Appeal, Case Number 323988-A1, and Rejection.

[39] <u>See</u> Document 1F.  The petitioner's appeal was due on April 24, 2004.

BOP staff that his earlier delay was not his fault.[40] The petitioner, however, failed to file any explanation as to why his appeal was almost two months late.

Because the petitioner failed to exhaust his available administrative remedies, his petition must be dismissed as it fails to meet the requirements of the PLRA.

**II. THE RESPONDENT WAS WITHIN HIS DISCRETION IN DENYING COMMUNITY CORRECTIONS CENTER PLACEMENT AND, THUS, EARLY RELEASE.**

Title 18 U.S.C. § 3621(b)(5) provides that "The Bureau shall make available appropriate substance abuse treatment for each prisoner the Bureau determines has a treatable condition of substance addiction or abuse." Congress provided incentives for prisoner participation in BOP drug treatment programs. The incentive provision reads: "the period a prisoner convicted of a nonviolent offense remains in custody after successfully completing a treatment program may be reduced by the Bureau of Prisons, but such reduction may not be more than one year from the term the prisoner must otherwise serve." 18 U.S.C. § 3621(e)(2)(B). See Lopez v. Davis, 531 U.S. 230, 233 (2001).

The statute categorically denies early release eligibility to inmates who have completed a drug treatment program if they have been convicted of violent offenses. Id. at 230. However, the BOP is not required to grant early release to every inmate

---

[40] Id.

who has completed a drug treatment program and is convicted of non-violent offenses. Id. at 241. The statute states that the sentence of such prisoners "may" be reduced, not "shall" be reduced. Id. See also Cook v. Wiley, 208 F.3d 1314, 1319 (11th Cir. 2000) ("Even if a prisoner is deemed statutorily eligible for the sentence reduction, the decision about whether to reduce his sentence remains solely within the discretion of BOP. . . and that decision is not subject to judicial review."); Zacher v. Tippy, 202 F.3d 1039, 1041 (8th Cir. 2000) ("The language of section 3621 (e)(2)(B) is permissive, stating that the Bureau 'may' grant early release, but not guaranteeing eligible inmates early release."). Indeed, the Supreme Court has held that the BOP has the discretion to exclude not only those convicted of violent crimes but also other categories of inmates. See Lopez v. Davis, 531 U.S. 230, 241 (2001).

BOP regulations set forth criteria as guides for determining whether to grant early release. 28 C.F.R. § 550.58. The regulations specify "additional early release criteria" permitting the BOP to deny eligibility for early release. Among the criteria precluding eligibility for early release is, "Inmates who have a prior felony or misdemeanor conviction for homicide, forcible rape, robbery, or aggravated assault . . . ." 28 C.F.R. § 550.58(a)(iv).

The petitioner's Presentence Investigation Report (PSR),

12

prepared by the United States Probation Department for the Western District of New York on June 16, 1997, lists a 1985 conviction for rape in the first degree.[41] Although this offense occurred when the petitioner was fifteen years old, it was adjudicated as a Youthful Offender and is listed within the PSR under "Adult Criminal Convictions".[42] The details of that offense include the gang rape of a sixteen year old female. Subsequently, prior to the petitioner's designation to a particular facility within the BOP, a Security/Designation Data form was completed on or about October 24, 1997.[43] Based upon the information provided to the BOP through the PSR, the petitioner was considered to have a "serious" prior history and the form included the following remark, "Prior: '85 Rape-Involved in the Gang Rape of a Female."[44] Based upon this documented history within the PSR, the petitioner was given a PSF of "Sex Offender."

The application of the PSF for "Sex Offender" is governed by BOP Program Statement 5100.07, <u>Security Designation and Custody Classification Manual</u> which states that the PSF for "Sexual Offender" applies to inmates whose behavior in the current term

---

[41] <u>See</u> Document 1V.

[42] <u>Id</u>.

[43] <u>See</u> Document 1W.

[44] <u>Id</u>.

of confinement or prior history includes "... 1) Engaging in sexual contact with another person without obtaining permission to do so."[45]

Once assessed the PSF of "Sex Offender," the petitioner was deemed inappropriate for CCC placement. Limitations on eligibility for CCC placement are governed by BOP Program Statement 7310.04, <u>Community Corrections Center Utilization and Transfer Procedure</u>, which provides that inmates who are assigned a "Sex Offender" PSF "shall not ordinarily participate in CCC programs."[46]

The petitioner's challenge to the application of the PSF for "Sex Offender" is essentially a challenge to his custody classification. It is well settled that in general, an inmate does not have a liberty interest to a particular security classification. <u>See</u> <u>Sandin v. Conner</u>, 515 U.S. 472, 486 (1995). <u>Olim v. Wakinekona</u>, 461 U.S. 238, 245 (1983); <u>Meachum v. Fano</u>, 427 U.S. 215, 224-25 (1976); <u>Montanye v. Haymes</u>, 427 U.S. 236, 243 (1976); <u>Moody v. Daggett</u>, 429 U.S. 78, 88 n. 9 (1976); <u>Newell v. Brown</u>, 981 F.2d 880, 883 (6th Cir.1992); <u>Beard v. Livesay</u>, 798 F.2d 874, 876 (6th Cir.1986).

Judicial review of the BOP's decision in this case is

---

[45]<u>See</u> Document 1R, BOP Program Statement 5100.07, Security Designation and Custody Classification, Chapter 7, Page 2.

[46]<u>See</u> Document 1Q, page 10, § 10.

unavailable pursuant to 18 U.S.C. § 3625, which provides that the Administrative Procedure Act is inapplicable to "the making of any determination, decision, or order under this subchapter..," the subchapter that includes section 3621 providing for early release.  18 U.S.C. § 3625 has been held to preclude judicial review of decisions applying valid regulations to individual inmates.  Ward v. Booker, 202 F.3d 1249, 1254 (10th Cir. 2000); Davis v. Beeler, 966 F. Supp. 483, 489 (E.D. Kentucky, 1997)("...[W]hat 18 U.S.C. § 3625 and the specific language of 18 U.S.C. § 3621 make clear is that the substantive decision of the BOP to grant or deny early release to a prisoner is precluded from judicial review by statute... Congress intended to commit these substantive decisions to the unreviewable discretion of the BOP."); Wiggins v. Wise, 951 F. Supp. 614, 621 (S.D. W.Va. 1996)("...[T]he court leaves the determination of eligibility and release to the discretion of the BOP...").  As long as the conditions or degree of confinement fall within the sentence imposed and do not otherwise violate the Constitution, the Due Process Clause does not bring the prisoner's custody status within the purview of judicial scrutiny. See Montanye v. Haymes, 427 U.S. 236, 242, (1976).

   A federal prisoner has no due process liberty interest in being placed in a halfway house, United States v. Laughlin, 933 F.2d 786, 789 (9th Cir. 1991), or in a particular penal

institution or program, Moody v. Daggett, 429 U.S. 78, 88 n. 9 (1976), or in an institution with a lower level of security, Freitas v. Ault, 109 F.3d 1335, 1337 (8th Cir. 1997). While it is true that BOP regulations "may under certain circumstances create liberty interests which are protected by the Due Process Clause...these interests will be generally limited to freedom from restraint which...imposes atypical and significant hardships on the inmate in relation to the ordinary incidents of prison life." Sandin v. O'Connor, 515 U.S. 472, 483-484 (1995). Being denied admission to a CCC, being assigned a classification that accurately reflects an inmate's prior conviction, and being denied early release for reasons of public safety, are not "atypical" treatments in a correctional setting. Accordingly, no protected liberty interests cognizable on federal habeas review has been implicated and the petitioner's Petition for Writ of Habeas Corpus must be dismissed.

**CONCLUSION**

Because the petitioner failed to exhaust his administrative remedies as required by the PLRA and because the respondent's decision was clearly within the discretion set forth by 18 U.S.C. § 3621, the respondent respectfully requests that this Court dismiss the petitioner's Petition for Writ of Habeas Corpus.

```
                              Respectfully submitted,

                              UNITED STATES OF AMERICA
                              By its attorney,

                              MICHAEL J. SULLIVAN
                              United States Attorney

                         By:  /S/ Christopher R. Donato
                              Christopher R. Donato
                              Assistant U.S. Attorney
                              U.S. Attorney's Office
                              John Joseph Moakley Courthouse
                              Suite 9200
                              1 Courthouse Way
                              Boston, MA 02210
                              (617) 748-3100
```

**CERTIFICATE OF SERVICE**

I certify that on this day a true copy of the above Memorandum in Support of Motion to Dismiss was served by first class mail, postage prepaid, upon the *pro se* petitioner:

Tim Seawright, Inmate
Federal Registry No. 0332-0556
Housing Unit H-A
Federal Medical Center Devens
P.O. Box 879
Ayer, MA 01432

Dated: October 25, 2004        /S/ Christopher R. Donato
                               Christopher R. Donato
                               Assistant U.S. Attorney

17