UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

TIM SEAWRIGHT,                    )
                                 )
        Petitioner,              )
                                 )
v.                               )    Civil Action No. 04-40145-PBS
                                 )
DAVID L. WINN, Warden,           )
                                 )
        Respondent.              )
                                 )
                                 )

## REPLY TO RESPONDENT'S MEMORANDUM IN SUPPORT OF
## MOTION TO DISMISS PETITIONER'S HABEAS CORPUS PETITION

The Petitioner, Tim Seawright, in Pro se, files this Reply
to the respondent's memorandum in support of their motion to
dismiss petitioner's habeas corpus petition and states:

### PERTINENT FACTS

The Petitioner, Tim Seawright ("Petitioner" or "Seawright")
was convicted for multiple non-violent drug related offenses and
sentenced to a term of imprisonment of 108 months on October 1,
1997.

After the computation of Petitioner's Good Time Credit by
the Federal Bureau of Prisons ("BOP"), he was given a projected
release date of April 9, 2005.

On May 24, 2002, while being incarcerated in the Federal
Correctional Institution ("FCI") in Elkton, Ohio, the Petitioner
signed an agreement to participate in the BOP Residential Drug
Abuse Treatment Program ("RDATP") which he had successfully

completed the agreed criteria of said program. Exhibit ("Exh") A

Provision, § 3621 eligibility form which indicates that such is
to be completed only if the inmate has completed or qualifies for
the residential drug abuse treatment program. Further, this Form
noted after the consultation with Petitioner Unit Team the
indication that the Petitioner does appear to be provisionally
eligible. Exh. B

On December 16, 2003, in a memorandum for Respondent, David
L. Winn, Warden, FMC Devens, from the Northeast Regional Office,
Regional Director,  a Mr. Wrigley informed the Respondent/Warden
that community corrections referral packet for the Petitioner has
been reviewed and found to be appropriate for a community
corrections  center placement of 90 days maximum. Exh. C

On January 17, 2004, the Petitioner filed an initial
administrative remedy in an attempt to obtain the entire 180
days community correctional center ("CCC") placement as provided
by 18 U.S.C. §§ 3621(e), 3624(b) and Program Statement ("PS ")
5330.10.

On February 19, 2004, the Respondent, David L. Winn, Warden,
response  to Petitioner's request for administrative remedy
was that he could only be considered for 90 days as a result of
his prior convictions. Resultantly, the Respondent denied the
Petitioner's request for 180 days CCC placement.

In two subsequent response letters dated February 4 and 26,
2004, the Community Corrections Manager of Pittsburgh,
Pennsylvania, representing the Northeast Regional Office CCC

2.

placement informed Petitioner that he was only appropriate for

referred for. Exh. D

The Petitioner appealed the Respondent's denial of
administrative remedy to the Northeast Regional Office in a B.P.
10. The Regional Director (D. Scott Dodrill) denied Petitioner's
appeal finding that the recommendation has not been followed
because of Petitioner's prior sex offense.

## REBUTTAL ARGUMENT

### 1.    The Petitioner does not have to exhaust administrative remedies in all cases.

It is true that administrative remedies ordinarily must be
exhausted before filing a habeas petition pursuant to 28 U.S.C.
§ 2241. However, failure to exhaust may be executed when any of
the following circumstances apply: "(1) available remedies provide
no 'genuine opportunity for adequate relief; (2) irreparable
injury may occur without immediate judicial relief;
(3) administrative appeal would be 'futile', and (4) in certain
instances [when] a plaintiff has  raised a 'substantial
constitutional question.'" Guitard v. United States Secretary
of Navy, 967 F.2d 737, 741 (2nd Cir. 1991) In any event, the
exhaustion requirement for §2241 petitions is prudential, not
statutory, unlike habeas corpus petitions filed pursuant to 28
U.S.C. § 2254. See Arango Marquez v. I.N.S., 346 F.3d 892,
897 (9th Cir. 2003)

Though, the respondent is partially correct is asserting
that exhaustion of administrative remedy is requisite before
filing the §2241. However, in this case, the failure to exhaust

3.

can be excused when irreparable injury may occur without

suffer irreparable injury had he not sought immediate habeas relief
he could have lost portion of the 180 days CCC placement he seek
as a relief from the constitutional violation. Guitard, supra.

In fact, the Petitioner now submits that as a direct result
of respondents' deliberate delay in the process of his
administrative remedy and § 2241 petition that the 180 day CCC
placement he sought as a habeas corpus relief has been affected,
which he cannot obtain the full 180 day pre-release time sought.

Besides, Petitioner is not required to exhaust administrative
remedies when such would be futile. Id. Thus, the Petitioner's
decision to forego further administrative remedy was dued to
the BOP show of indifferent towards his pursue of 180 days of
CCC placement, which such indifferent made any attempt to
continue administrative remedies would be futile.

Therefore, the respondent's contention that Petitioner's
§ 2241 petition should be dismissed based on his failure to
exhaust administrative remedies should be rejected. Thus, the
Petitioner's claims should be resolved by this Court since
the Petitioner did attempt to exhaust administrative remedies, but
such proved to be futile, and, in any event, the Petitioner
continues to suffer irreparable injury by further delay in this
proceeding where his statutory release date is April 5, 2005.

>     2.  The Respondent lacked Discretion to Deny
>         Petitioner some Community Corrections Center
>         Placement where the Statute and the Responent's
>         Created 'Liberty Interest' required such.

The Respondent's contention that Petitioner's §2241 petition

4.

should be dismissed is without merit, and is not based on facts

statute (§3621) provided the Respondent discretion to deny

Petitioner CCC placement, that Statute 3624 when considered in

conjunction with § 3621 the respondent's discretion becomes

limited. In fact, the Respondent further argued wrongly that

federal prisoner has no due process liberty interest in being

placed in a half-way house.

First, the Respondent correctly argues that §3621 does not

use mandatory language to require strict compliance. Still,

§ 3621(b) was implemented by Congress to instruct BOP to place

federal prisoners in a place of imprisonment, and give BOP the

discretion to transfer prisoners to any place of imprisonment to

serve out their sentences. See <u>Golding v. Winn</u>, 383 F.3d 17 (1st

Cir. 2004)

However, in <u>Goldings</u>, the First Circuit recognized that

§3621(b) provided the BOP the discretion to place federal

prisoners in CCC during any time of the prisoner's sentence.

But, more importantly, the Court found that §3624(c) directs

the BOP to assure that a "prisoner serving a term of imprisonment

spend a reasonable part of that term [of imprisonment]" under

pre-release conditions, including (expressly) home detention and

(implicitly) community confinement. See <u>Goldings</u>, 383 F.3d at

26.

Further, the Court emphasized that this language under

§3624(c) imposes an affirmative obligation on the BOP to take

steps to facilitate a smooth re-entry for prisoners into the

5.

outside world. Id.

mandatory language limiting the BOP/ or Respondent discretion.
That, statute 3624(c) contains language such as "shall" and
"assure" which are words that requires the BOP to adhere to
strict compliance with such statute. Thus, such mandatory
language creates a liberty interest protected by due process when
such statute provides the prisoners an expectation. See Sandin
v. Conner, 515 U.S. 472 (1995)(states through statutes or
regulations can create liberty interest).

Surely, Congress intent in implementing such statutes imposes
upon the BOP a duty to prepare prisoners for reentry into the
community. Further, the Goldings stated that the BOP is not
free to disregard such duty. If it did so, judicial relief might
to available. Id. at 23.

Even assuming  for sake of argumento, that §3624(c) is not
mandatory on the BOP. Still, the respondent's actions of
awarding him 90 days of CCC placement created a "liberty interest'
that was protected by the Due Process Clause of the Fifth
Amendment of the United States Constitution.  Sandin, supra;
Hewitt, 459 U.S. at 469.

Indeed, the BOP created a consent decree to place Petitioner
in CCC for 90 days when Northeast Region  Office personal Mr.
Wrigley made a memo that informed the Respondent/Warden that
Petitioner's community corrections referral packet was reviewed
and found appropriate for CCC placement of 90 days. Exh. C & D

Surely, such decision created a "liberty interest" protected

6.

by due process when such created an expectation that could not
be taken unless he was afforded minimal due process of law. After
all the Respondent arbitrary decision to rescind the Petitioner's
90 days CCC placement that he had earned through his successful
completion of the drug abuse program was plainly a violation of
his due process right. Sandin, supra.

Further, the Respondent's reliance upon the Petitioner's
sexual offense to rescind their decision to place him in the
CCC for 90 days was also an arbitrary decision when the respondent
had already considered such information prior to awarding him
the 90 days. Besides, the respondent was prohibited from
considering such information when State does not authorize the
use of youth offender adjudication since such is not a judgment
of conviction. See Exhibit E

In any event, both the statute (3624(c)) and the BOP
decision to award him 90 days of CCC placement created such
liberty interest protected by due process, which bounded the
respondent to adhere to. Thus, the respondent's assertion is
meritless which such should be rejected.

Another reason the respondent's contention must fail is
because a review of the letters from the Community Corrections
Manager of Pittsburgh, Pennsylvania and the memorandum from the
Regional Office reveal that those documents contains language
that could be inferred that the Petitioner was granted 90 days
CCC placement, which create a liberty interest that cannot be
taken away without due process of law. Just as the First Circuit
decision in Goldings authorize the BOP to provide CCC placement

7.

all inmates at the end of their sentence.

a relief under this statute (§2241) is flaw when the Court can grant Petitioner the 90 days CCC placement previously awarded him by the respondent.

Therefore, the Petitioner CCC placement of 90 days should be reinstated since he was not afforded due process before he was deprived of such liberty interest by the respondent.

### CONCLUSION

According, the Petitioner, TIM SEAWRIGHT, respectfully request this Honorable Court granted his 90 days or more CCC Placement, and thus, the WRIT should be issued.

Respectfully submitted,

Tim Seawright, Pro se
Reg. No. 06362-055
FMC-Devens
P. O. Box 879
Ayer, MA 01432

### CERTIFICATE OF SERVICE

I certify that on this day a true copy of the above reply to respondent's memorandum in support of motion to dismiss was served by first class mail, postage prepaid, upon the respondent's attorney:

Christopher R. Donato
Assistant U.S. Attorney
U.S. Attorney Office
1 Courthouse Way
Boston, MA 02210

dated: November 4, 2004

Tim Seawright, pro se petitioner

8.

**EXHIBIT - A**

AGREEMENT TO ............... ......... .......... .......NTIAL DRUG ABUSE TREATMENT PROGRAM

The Federal Bureau of Prisons offers a full range of drug education and treatment programs for inmates with alcohol and other drug abuse problems. Bureau of Prisons staff are committed to providing quality drug abuse programming to inmates who choose to participate in any one of these program options. Inmates who choose to participate in any of the Bureau's drug programs must acknowledge and agree to a number of program rules and policies prior to admission.

All program participants agree to participate in classes/counseling/group sessions as designated by the BOP Psychology and Drug Treatment Staff.

All program participants agree to refrain from any behavior disruptive to the program or to the participants and staff of the program.

All program participants agree to complete all tasks as assigned.

All program participants agree to take part in the program activities, including group work and homework as assigned.

All program participants agree to accept responsibility for not disclosing inmate information.

All program participants have been informed and understand that they may be expelled from the program for failure to comply with program rules and regulations. Ordinarily, immediate expulsion will result if the participant, pursuant to an incident report is found by the DHO to have:

    1)    Used or possessed alcohol or drugs;
    2)    Been violent or threatened violence against staff or another inmate; or
    3)    Committed a 100 series prohibited act.
    4)    Committed a prohibited act involving alcohol or drugs after completing the unit-based segment of the program.

In addition to the agreements listed and checked above, I understand that, by agreeing to participate in residential drug abuse treatment, under ordinary circumstances, I will not be considered for transfer to another institution, including a camp, during my participation in the residential drug abuse program.
I understand that participation in the residential drug abuse program does not relieve me of any financial responsibility legally imposed.
I understand that some of my counseling sessions may be audio/video taped. I understand these tapes will be used only for rehabilitative or educational purposes within the program. I understand that I will continue to be subjected to random drug abuse testing.

I understand that if I choose to withdraw, or am expelled from the program:

    ♦    incentives received while an active program member may be lost;

    ♦    any request for re-admission will include a reassessment for participation;

    ♦    there will be no consideration for extended CCC placement; and

    ♦    I will lose my eligibility for an early release    consideration.

I understand and agree to continued transitional drug treatment services that include:

    ♦    continued positive behavior and treatment programming upon my return to general population. Failure to participate in continued treatment in the institut      .ansition program, as prescribed by psychology staff, for less than one hour each month over a period of 12 months will result in my termination from treatment and loss of incentives previously and potentially earned;

    ♦    continued treatment programming upon my return to the community through transfer to a CCC or on home confinement. Failure to participate in continued treatment in the community transition program may result in my return to the institution, or, at the very least, to local custody; and

CN-81, May 17, 1996
Attachment 8-3, Page 2

I understand that I must be responsible for:

- knowing the rules, goals and schedules of my particular treatment plan;

- attending all scheduled sessions that are assigned to me. Should I leave prior to the conclusion of the session, without permission, this is to be considered an absence;

- completing all assignments on time;

- actively participating in group sessions. Examples of active participation include, appropriate self-disclosure, and providing feedback;

- working on the goals/objectives of my treatment plan;

- being attentive during all individual and group sessions;

- keeping all information discussed in group confidential;

- following the Bureau of Prisons rules and regulations. When I incur an incident report because I have failed to follow rules and regulations, I can be expelled from the program.

- _____

- _____

I understand that staff may recommend, as a condition of my supervised release or parole, a stipulation that I receive continued treatment during the period of such release.

I understand that if I have been found eligible for an early release under 18 U.S.C. §3621(e), this eligibility is provisional, and may change.

I understand and consent to the release of information specified below by Bureau of Prisons staff to the appropriate U.S. Parole Commission staff, U.S. Probation staff, Community Corrections Staff, and Treatment Program Staff for the purpose of determining my eligibility for a SPA or for developing a treatment plan.

The extent and nature of the information to be disclosed includes: substance abuse history; drug program assessment summary; treatment progress; relapse prevention plan; and recommendations for continued treatment.

### AGREEMENT/SIGNATURE

I have read, or have had this document read to me, and I understand and agree to the rules and regulations for participation in the residential drug abuse treatment program as described in this agreement to participate.

Inmate Name Printed

Inmate Signature

Register Number

Date

Debra Yovichin
Staff Name Printed

Staff Signature

Drug Treatment Specialist
Staff Title

5-24-02
Date

**EXHIBIT - B**

Attachment J, Page 2

SECTION 2 – PROVISIONAL § 3621(E) ELIGIBILITY – TO BE COMPLETED

FOR RESIDENTIAL DRUG ABUSE TREATMENT PROGRAM GRADUATES TO BE
ELIGIBLE FOR EARLY RELEASE, THEY MUST (DAPC must initial):

NOT BE AN INS DETAINEE.

NOT BE A PRE-TRIAL INMATE.

NOT BE A CONTRACTUAL BOARDER.

NOT BE AN "OLD LAW" INMATE.

NOT HAVE A CURRENT CRIME THAT IS AN EXCLUDING OFFENSE
IN BOP CATEGORIZATION OF OFFENSES POLICY (Mark an `X'
in the appropriate block below).

_____ NOT A CRIME OF VIOLENCE AS CONTAINED IN BOP
CATEGORIZATION OF OFFENSES POLICY.

_____ NOT AN EXCLUDING CRIME BY THE DIRECTOR'S
DISCRETION IN CATEGORIZATION OF OFFENSES POLICY

NOT HAVE ANY PRIOR FELONY OR MISDEMEANOR ADULT
CONVICTION FOR HOMICIDE, FORCIBLE RAPE, ROBBERY,

AGGRAVATED ASSAULT, OR SEXUAL ABUSE OF CHILDREN.

UNDERSTAND THAT NEARING THE TIME OF YOUR RELEASE, THE
WARDEN WILL DETERMINE IF YOU ARE ELIGIBLE FOR TRANSFER
TO A COMMUNITY-BASED PROGRAM. IF YOU ARE NOT ELIGIBLE,
YOU CANNOT COMPLETE THE COMMUNITY TRANSITIONAL SERVICES
PORTION OF THE DRUG PROGRAM, AND THEREFORE, YOU MAY NOT
RECEIVE A § 3621 (e) RELEASE.

MY CURRENT ASSESSMENT, IN CONSULTATION WITH YOUR UNIT TEAM, IS
THAT IT ( DOES // DOES NOT  APPEAR THAT YOU ARE PROVISIONALLY
ELIGIBLE FOR AN EARLY RELEASE. IF NOT, LIST ALL THE REASON(S):

Comments: _Providing you receive CCC placement_
_PSF = 82_

IF APPLICABLE, I UNDERSTAND THAT A DETERMINATION OF EARLY RELEASE
FOR ME IS PROVISIONAL, MAY CHANGE, AND DEPENDS ON CONTINUED
POSITIVE BEHAVIOR AND SUCCESSFUL PARTICIPATION IN ALL COMPONENTS
OF THE PROGRAM, INCLUDING COMMUNITY TRANSITIONAL SERVICES.

INMATE'S SIGNATURE _____
(indicate if refused to sign)

cc: Drug Abuse Treatment File
    Unit Team (place in section 4 of inmate central file)

**EXHIBIT - C & D**

*Northeast Regional Office*

*Philadelphia, PA  19106*

December 16, 2003

MEMORANDUM FOR DAVID L. WINN, WARDEN
FMC DEVENS

FROM:               M. E. Ray, Regional Director

SUBJECT:            Community Corrections Center Referral
                    SEAWRIGHT, Tim
                    Register Number: 06362-055

The Community Corrections referral packet for the above-referenced inmate has been reviewed.
Mr. Seawright has been found to be appropriate for a Community Corrections Center placement
of 90 days maximum.

The Philadelphia Community Corrections Office has been instructed to process the referral.

Should you have any questions, please contact me.



Federal Bureau of Prisons

*Wm. S. Moorehead Fed. Bldg.*        *412 395 4740*
*1000 Liberty Avenue, Room 831*        *FTS-722-4740*
*Pittsburgh, PA 15222*

February 4, 2004

Timothy Seawright
Federal Reg. No. 06362-055
FMC Devens
P.O. Box 879/H
Ayer, MA 01432

RE: Request for a 180-day Community Corrections Center (CCC) Placement

Dear Mr. Seawright:

This in response to your correspondence dated January 12, 2004, and follow-up correspondence dated January 17, 2004, which were addressed to Mr. M.E. Ray, Northeast Regional Director. Those correspondences were forwarded to this office for a response. Specifically, you wish to be referred to a CCC for a 180-day placement as opposed to a 90-day placement.

First, please be advised that you were recently referred to a CCC and they are currently reviewing your suitability for placement in their program. As of the above date, you have not yet been accepted by a CCC for placement. Furthermore, the placement of an inmate into a CCC is simply a programming option available to Bureau of Prisons (BOP) staff; not all inmates participate in community programs.

Inmates who successfully complete the Residential Drug Treatment Program's institutional phase are normally considered for a 180-day period of CCC placement, if they are otherwise eligible. Based on your participation in the above referenced treatment program, institution staff recommended a 180-day placement. However, that was only a recommendation. CCC placements are based on the inmate's need for services, public safety, and the necessity of the BOP to manage its inmate population responsibly. Therefore, a number of factors must be weighed to determine the length of CCC placement for inmates. Additionally, there are a variety of limitations on the eligibility of an inmate for CCC placement. In accordance with Program Statement 7310.04, *Community Corrections Center (CCC) Utilization and Transfer Procedures*, inmates who are assigned a Sex Offender Public Safety Factor shall not ordinarily participate in a CCC program. However, upon review of the institution's recommendation and all pertinent information by the Regional Management Team, it was determined that a 90-day CCC referral would be appropriate.

In your follow-up letter, you indicate that your conviction for Rape should not be used in your classification as you were a juvenile and the record is sealed. Please be advised that the Rape conviction is reflected in your Pre-sentence Investigation Report (PSI) as part of your adult criminal convictions. Additionally, Program Statement 5100.07, *Security Designations and Custody Classification Manual*, clearly states that documented information from juvenile adjudications can be used in the classification of an inmate, unless the records have been expunged or vacated.

Review of the referral packet submitted by the institution reflects that you have a release residence but will need to secure employment. All inmates are required to obtain appropriate full time employment within adequate. Again, you have only been referred to a CCC for placement consideration. You have not been accepted into a program at this time.

I trust the above information is useful in clearing up your confusion regarding CCC placements.

Sincerely,

Helen L. Ramsdell
Community Corrections Manager

cc: File



Federal Bureau of Prisons

*Wm. S. Moorehead Fed. Bldg.*                    412 395 4740
*1000 Liberty Avenue, Room 831*                   FTS-722-4740
*Pittsburgh, PA  15222*

February 26, 2004

Timothy Seawright
Federal Reg. No. 06362-055
FMC Devens
P.O. Box 879/H-1
Ayer, MA 01432

RE: Request for a 180-day Community Corrections Center (CCC) Placement

Dear Mr. Seawright:

    This in response to your correspondence dated February 7, 2004, in which you indicate you only recently advised your Unit Team of the circumstances surrounding your conviction for Rape.  As such, I delayed my response to you in an effort to see if any adjustments were made to your custody classification.

    To date, a Public Safety Factor (PSF) of sex offender is still part of your classification.  Additionally, staff have not indicated any changes to the sex offender notification and registration requirements as they pertain to your case.  If institution staff are currently reviewing those items, they will need to advise this office of any changes (PSF, registration, notifications, etc.) which may affect CCC placement consideration.  At that time, the referral will be re-evaluated.  As you were previously informed, the Regional Management Team reviewed the institution's recommendation and all information submitted by the institution.  Upon completion of that review, it was determined that a 90-day placement in a community program would be appropriate.  Therefore, you were referred for a 90-day CCC placement.

    You now also request to be considered for 90-days at a CCC and 90-days on home confinement.  As stated above, the Regional Management Team approved you for a total community placement of up to 90-days.  Home confinement is an opportunity for inmates to assume increasing levels of personal responsibility while providing sufficient restriction to promote community safety.  When an inmate has demonstrated to CCC staff that they no longer require the level of accountability and services the CCC provides, they will refer the inmate for participation in the home confinement program.  Any inmate with a Public Safety Factor requires the concurrence of the Community Corrections Regional Administrator prior to placement on home confinement.

    Based on the above, the length of your community placement will not be adjusted at this time.

Sincerely,

Helen L. Ramsdell
Community Corrections Manager

cc:  File

**EXHIBIT - E**

CRIMINAL PROCEDURE LAW                    §725.05

the action to judgment pursuant to the ordinary rules governing criminal prosecutions.

### §720.30. Youthful offender adjudication; post-judgment motions and appeal.

The provisions of this chapter, governing the making and determination of post-judgment motions and the taking and determination of appeals in criminal cases, apply to post-judgment motions and appeals with respect to youthful offender adjudications wherever such provisions can reasonably be so applied.

### §720.35. Youthful offender adjudication; effect thereof; records.

1. A youthful offender adjudication is not a judgment of conviction for a crime or any other offense, and does not operate as a disqualification of any person so adjudged to hold public office or public employment or to receive any license granted by public authority.

2. Except where specifically required or permitted by statute or upon specific authorization of the court, all official records and papers, whether on file with the court, a police agency or the division of criminal justice services, relating to a case involving a youth who has been adjudicated a youthful offender, are confidential and may not be made available to any person or public or private agency, other than an institution to which such youth has been committed, the division of parole and a probation department of this state that requires such official records and papers for the purpose of carrying out duties specifically authorized by law.

### Article 725
### REMOVAL OF PROCEEDING AGAINST JUVENILE OFFENDER TO FAMILY COURT

Sec.
725.00. Applicability.
725.05. Order of removal.
725.10. Removal of action.
725.15. Sealing of records.
725.20. Record of certain actions removed.

### §725.00. Applicability.

The provisions of this article apply in any case where a court directs that an action or charge is to be removed to the family court under section 180.75, 190.71, 210.43, 220.10, 310.85 or 330.25 of this chapter.

### §725.05. Order of removal.

When a court directs that an action or charge is to be removed to the family court the court must issue an order of removal in accordance with this section. Such order must be as follows:

1. It must provide that the action or charge is to be removed to the family court of the county in which such action or charge was pending, and it must specify the section pursuant to which the removal is authorized.

©1988 by J.B.& L. Gould
Printed in the U.S.A.  Ch                    573

§720.15                    CRIMINAL PROCEDURE LAW

**§720.15. Youthful offender procedure; sealing of accusatory instrument; privacy of proceedings; preliminary instructions to jury.**

1. When an accusatory instrument against an apparently eligible youth is filed with a court, the court, with the defendant's consent, must order that it be filed as a sealed instrument, though only with respect to the public.

2. When a youth is initially arraigned upon an accusatory instrument, such arraignment and all proceedings in the action thereafter may, in the discretion of the court and with the defendant's consent, be conducted in private.

3. The provisions of subdivisions one and two of this section requiring or authorizing the accusatory instrument filed against a youth to be sealed, and the arraignment and all proceedings in the action to be conducted in private shall not apply in connection with a pending charge of committing any felony offense as defined in the penal law. The provisions of subdivision one requiring the accusatory instrument filed against a youth to be sealed shall not apply where such youth has previously been adjudicated a youthful offender or convicted of a crime.

**§720.20. Youthful offender determination; when and how made; procedure thereupon.**

1. Upon conviction of an eligible youth, the court must order a presentence investigation of the defendant. After receipt of a written report of the investigation and at the time of pronouncing sentence the court must determine whether or not the eligible youth is a youthful offender. Such determination shall be in accordance with the following criteria:

(a) If in the opinion of the court the interest of justice would be served by relieving the eligible youth from the onus of a criminal record and by not imposing an indeterminate term of imprisonment of more than four years, the court may, in its discretion, find the eligible youth is a youthful offender; and

(b) Where the conviction is had in a local criminal court and the eligible youth had not prior to commencement of trial or entry of a plea of guilty been convicted of a crime or found a youthful offender, the court must find he is a youthful offender.

2. Where an eligible youth is convicted of two or more crimes set forth in separate counts of an accusatory instrument or set forth in two or more accusatory instruments consolidated for trial purposes, the court must not find him a youthful offender with respect to any such conviction pursuant to subdivision one of this section unless it finds him a youthful offender with respect to all such convictions.

3. Upon determining that an eligible youth is a youthful offender, the court must direct that the conviction be deemed vacated and replaced by a youthful offender finding; and the court must sentence the defendant pursuant to section 60.02 of the penal law.

4. Upon determining that an eligible youth is not a youthful offender, the court must order the accusatory instrument unsealed and continue

©1988 by J.B.& L.Gould.
Printed in the U.S.A.  Ch